**Elizabeth M. KIERNAT, Bruce E. Kiernat, Valerie M. Moore, and Richard A. Moore, Jr., Plaintiffs,**

v.

**COUNTY OF CHISAGO, Defendant.**

Civ. No. 4–82–1215.

United States District Court, D. Minnesota, Fourth Division.

April 8, 1983.

---

B.C. Hart, Briggs & Morgan, Richard A. Moore, Jr., Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., Bruce E. Kiernat, Moore, Costello & Hart, St. Paul, Minn., for plaintiffs.

James R. Clifford, Chisago County Atty., Center City, Minn., for defendant.

A.W. Clapp, III, Sp. Asst. Atty. Gen., and C. Paul Faraci, Deputy Atty. Gen., St. Paul, Minn., appeared for amicus curiae Minnesota Dept. of Natural Resources.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs Elizabeth and Bruce E. Kiernat and Valerie and Richard A. Moore, Jr., bring this action against defendant Chisago County for damages, injunctive and declaratory relief, alleging that certain zoning activities of the defendant are unconstitutional or unlawful. Federal question jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343(3), 1343(4), 2201 and 2202. The matter is now before the court on plaintiffs' motion for partial summary judgment on their request for declaratory and injunctive relief.

This case arises out of plaintiff landowners' desire to rebuild a cabin on its original site on land subject to a scenic easement taken by the United States and located in defendant Chisago County.

The County's Board of Adjustment, claiming to act under certain of its zoning ordinances, has refused to approve plaintiffs' request for a variance to rebuild unless the following conditions are met: 1) the cabin and deck be rebuilt 60 feet farther away from the river, 2) the cabin must never have a well or water supply, 3) the cabin continue to be used only for "occasional overnight occupancy", and 4) defendant shall have no liability to provide emergency services. Plaintiffs contest this action on a number of grounds.

The relevant facts in this dispute are stipulated between the parties and no issue of fact appears to exist. An examination of the statutory and regulatory background is necessary to consideration of the issues presented.

*Statutory Background*

The National Wild and Scenic Rivers Act (the Act), was enacted for the purpose of implementing a policy to preserve wild and scenic rivers in free-flowing condition, and "... their immediate environments shall be protected for the benefit and enjoyment of present and future generations". 16 U.S.C. §§ 1271 and 1272. The Act, among other things, provides for federal acquisition of land or interests in land (including scenic easements). 16 U.S.C. § 1277(a). Acquisi-

tion of fee title by condemnation is subject to certain limitations, and such condemnation may not be used where valid local zoning ordinances exist that conform with the purpose of the Act. 16 U.S.C. § 1277(c). Then, however, the federal government may acquire other interests in land to effectuate the Act, including scenic easements. These are defined as

the right to control the use of land (including the air space above such land) ... for the purpose of protecting the natural qualities of a designated wild, scenic or recreational river area, but such control shall not affect, without owner's consent, any regular use exercised prior to the acquisition of the easement.

16 U.S.C. § 1286(c).

The Act permits joint administration with state and local governments. It provides in part

The Federal agency charged with the administration of any component of the national wild and scenic river system may enter into written cooperative agreements with the Governor of a State, the head of any State agency, or the appropriate official of a political subdivision of a State for State or local governmental participation in the administration of the component. The States and their political subdivisions shall be encouraged to cooperate in the planning and administration of components of the system which include or adjoin State- or county-owned lands.

16 U.S.C. § 1281(e).

By an amendment to the original Act, the Lower St. Croix River was included for protection. The segment running 27 miles south of Taylors Falls was designated for inclusion by Congress and placed under the administration of the National Park Service. An additional 25 mile segment immediately south of this federal segment was to be included upon application of the states of Wisconsin and Minnesota and jointly administered by those states. Plaintiffs' property is in the federally administered segment.

Pursuant to the law, a master plan for the entire Lower St. Croix was jointly developed by the United States and the two states with the assistance of the Minnesota-Wisconsin Boundary Area Commission. The plan provides its overall goal is "to preserve the existing scenic and recreational resources of the Lower St. Croix River through controlled development." The plan notes that the area includes

6,065 acres of which a maximum of 2700 acres will be acquired in fee with the balance proposed for scenic easement acquisition. This limited acquisition will be utilized in undeveloped and sparsely developed areas to protect shore, slope and bluff top lands from incompatible uses. Zoning standards are proposed for the remainder of the lands within the boundary.

. . . .

The Lower St. Croix Riverway will be by necessity a cooperative agreement undertaken by all levels of government. Local governments will be required by the States to develop zoning controls along the St. Croix that are consistent with the purposes of the Wild and Scenic Rivers Act.

The plan also contains recommended zoning provisions for local and state governments.

The Master Plan states the responsibility of the federal government in managing its segment of the Lower St. Croix. These responsibilities include

The Federal role will be to perpetuate and administer their lands to the fullest extent possible, . . . .

. . . .

Federal responsibility with existing communities will be to assist and advise in the planning of communities, ... Plans can be coordinated with the States, involving land use, water quality, and public recreation. Land or land interests unacquired by the Federal Government will be the major responsibility of the local units of government.... Suggested zoning guidelines have been provided in this plan for the guidance and use by the local units of government . . . .

At the time of the establishment of the Lower St. Croix National Scenic Riverway, defendant Chisago County had in effect a shoreland ordinance permitting continuation of, but disallowing alteration or addition to, any substandard land uses existing prior to the adoption of the ordinance. After the establishment of the Riverway, the County adopted a Lower St. Croix National Scenic Riverway Ordinance, pursuant to Minn.Stat. § 104.25(3) and standards promulgated thereunder, to protect the scenic values of the Lower St. Croix in a manner consistent with the Act. This ordinance allowed continued substandard uses, with certain exceptions, including "if the market value of the substandard structure is decreased by more than 50% in any one calendar year, the county may order . . . any replacement thereof to conform to the dimensional requirements of this ordinance." Among other things, the ordinance requires a 200 foot setback from the shoreline.

*Factual Background*

Plaintiffs are the owners of certain real property in Franconia Township, Chisago County, Minnesota, adjacent to the St. Croix River. In 1977 the United States acquired, for consideration, a "scenic easement" on plaintiffs' property pursuant to the scheme under the Act, as amended, 16 U.S.C. § 1271 et seq. The scenic easement agreement allows the National Park Service to restrict construction on plaintiffs' property.[1] The agreement also provides that the plaintiffs

> reserve the right to maintain, replace or rebuild any residence or other structure now existing or any part thereof in substantially the same form and location if such is damaged or destroyed by fire, storm or other casualty.

. . . .

NOR SHALL THE EASEMENT AFFECT, WITHOUT THE GRANTOR'S CONSENT, ANY REGULAR USE EXERCISED PRIOR TO THE ACQUISITION OF THIS EASEMENT BY THE UNITED STATES OF AMERICA.

In acquiring this scenic easement the United States also furnished a letter to plaintiffs summarizing the representations of the National Park Service regarding the effect of the scenic easement. The letter stated in part:

> It is consistent with the intent and purposes of the "Wild and Scenic Rivers Act" (Public Law 90–542), the amendments thereof and the master plan and regulations issued pursuant thereto that:
>
> 1. The respective owners of Tract 02–252 and Tract 02–253, and their respective heirs, successors and assigns, may maintain the structures which are now located thereon, and any additions thereto and replacements thereof which are subsequently permitted under the terms of said Scenic Easement and this letter.
>
> 2. The respective owners of Tract 02–252 and Tract 02–253, and their respective heirs, successors and assigns, may tear down, rebuild and replace the structures which are now located thereon, and any additions thereto and replacements thereof which are subsequently made pursuant to the terms of said Scenic Easement and this letter, with structures of substantially the same size, form, nature and location.

On September 6, 1981, a fire destroyed plaintiffs' 16' × 28' cabin and adjoining 12' × 22' deck. The destroyed structure was located approximately 60 feet from the St. Croix River. Remaining intact was an outdoor privy located further from the river.

On May 26, 1982, plaintiffs requested the National Park Service, Franconia Township and the County to grant all approvals and variances, if any, necessary to permit them to rebuild the cabin and deck in substantially the same form and location as before the fire. Consistent with their representations

---

1. The agreement provides in part: "No residences shall be constructed except, upon written approval of the National Park Service, single family residences may be constructed if; (a) the site is not in line of sight from the Namekagon River or St. Croix River; (b) in conformity with local zoning regulations; and, (c) the lot consists of at least 1½ acres with the side most parallel to the Namekagon River or St. Croix River being at least 250 feet."

in obtaining the scenic easement, the National Park Service approved their request. In a letter to the plaintiffs a Park Service representative stated:

> you have satisfied item four of the scenic easement agreement which allows you "___ the right to maintain, replace, or rebuild any residence or other structure now existing or any part thereof in substantially the same form and location if such is damaged or destroyed by fire, ___". Therefore, your plans to rebuild meet with National Park Service guidelines and approval to rebuild is granted *provided you obtain the necessary approval from Franconia Township and Chisago County.* (Emphasis added.)

Franconia Township recommended that the County approve plaintiffs' request. The Minnesota-Wisconsin Boundary Area Commission also advised defendant that such a replacement was not objectionable. The Commission's letter of June 16, 1982 stated in part:

> We don't object to replacement of a structure that has been destroyed provided it is no more visually conspicuous as viewed from the river than the previous building. The primary purpose of the St. Croix's special zoning regulations is to preserve the *existing* scenic view from the river for future generations. Pre-existing structures that are visible from the river may remain in perpetuity, as far as our program is concerned, because they were part of the existing scenic character when the Riverway was created. *Chisago County's ordinance may contain other requirements that structures damaged beyond 50 percent of their value be replaced only in compliance (many ordinances do contain such a provision), and if that is the case the county should follow its own rules.* (emphasis added) The most important element of our position here is its (*sic*) no more visually conspicuous as viewed from the river than it was originally. That means the building should be no taller, no closer to the river, and no larger on either side than its predecessor. If any size increase is allowed, it can only be on the rear. We

would object strenuously to any increase in the structure's vertical, horizontal or riverward dimensions.

*Discussion*

Plaintiffs argue that defendant's exercise of its zoning authority is an impermissible abrogation of the terms of a federal land acquisition, relying upon *United States v. Little Lake Misere Land Co., Inc.,* 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973) and *United States v. Albrecht,* 496 F.2d 906 (8th Cir.1974). These cases involved attempts by property owners to escape explicit provisions of a federally acquired interest in their land by arguing that state law prohibited the acquisition of such an interest. The matter before the court is different. There is no attempt by the County to deny the federal government the exercise of its easement rights.

Plaintiffs' argument misapprehends the nature of the United States' scenic easement. Under traditional property law concepts the United States would seem to have acquired a type of negative easement, *i.e.,* an interest in land by which the United States has the right to prohibit certain uses of land. The easement agreement protects the grantor's right as against the United States to continue prior regular uses, but it does not grant plaintiffs any new rights. It merely provides that plaintiffs "reserve" their right to rebuild in the same form and location. The easement does not provide a federal right to act free from regulation by others. Accordingly, plaintiffs' argument that defendant's action abrogates the explicit terms of a federal land acquisition is unpersuasive.

Plaintiffs also argue that the County's proposed restrictions do not comply with state and local law requiring zoning to be "consistent with" the purposes of the Act. The purpose of the Act is defined as "preserving" rivers designated for their outstanding scenic or other values in their "free flowing condition" and protecting them "in their immediate environment" for the benefit of future generations. 16

U.S.C. §§ 1271 and 1272. Administration of the system is to be "in such manner as to protect and enhance the values which caused [the river] to be included in said system . . . primary emphasis shall be given to protecting its esthetic, scenic, historic, archeologic and scientific features". 16 U.S.C. § 1281(a).

Although the Act permits continuation of pre-existing uses, it is hardly inconsistent with the purposes of the Act if a local authority requires a change in use that would further enhance the scenic qualities of a protected river. More stringent[2] state or local regulations are not inconsistent with the Act merely because the federal regulatory scheme does not require alteration of pre-existing uses.

Plaintiffs also argue that the state has ceded concurrent jurisdiction over their right to rebuild in the same form and location. In support they cite *U.S. v. Brown,* 552 F.2d 817 (8th Cir.1977), *cert. denied,* 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977), where a defendant was convicted of possessing a firearm and hunting in Voyageurs National Park, a violation of federal, but not of state, law. The Eighth Circuit noted that

> the state's active participation in the creation of Voyageurs Park with the knowledge that Congress intended hunting would be prohibited throughout the park was tantamount to a cession of jurisdiction over the lands and the waters within the park boundaries.

552 F.2d at 821.

In the instant case the state participated in the establishment of the Lower St. Croix Riverway, but there is no evidence that Congress intended there be no local regulation of replacement of pre-existing structures. The United States simply did not acquire any interest in controlling the replacement of a pre-existing structure in the same form and location. As the Master Plan notes, land interests unacquired by the federal government "will be the major re-

sponsibility of local units of government". The National Park Service, in approving plaintiffs' plans to rebuild, advised that the approval was granted "provided that you [plaintiffs] obtain the necessary approval from Franconia Township and Chisago County".

Finally, it is urged that state and local zoning is preempted by the Federal regulatory scheme permitting replacement of pre-existing structures in the same form and location. Congress has not expressed its intention to preempt this zoning, and compliance with both state and federal regulations is possible; therefore, only an implied intention of Congress could be a basis for preemption here. *Northern States Power Company v. Minnesota,* 447 F.2d 1143 (8th Cir.1971). The Act is replete with provisions suggesting cooperative regulation, with the state and local government. *See e.g.* 16 U.S.C. §§ 1273(a), 1275(b), 1276(b) and 1281(e). Similarly, the Master Plan also envisions a cooperative effort, suggests zoning standards, and leaves land interests unacquired by the federal government within the primary responsibility of local government. These facts suggest there is neither a Congressional intention of preemption nor a pervasive federal regulatory scheme.

Since plaintiffs have not established their right to partial summary judgment in their favor, it appears that they will be unable to establish any basis for recovery and that this action should be dismissed. There is no motion to dismiss before the court, however, and the parties shall be given an opportunity to address this issue prior to further action by the court.

### ORDER

Accordingly, based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED

1. That plaintiffs' motion for summary judgment is denied.

---

**2.** The parties apparently agree that the proposed local zoning restrictions would make for a more scenic or wild environment.

2. That the parties show cause in writing, no later than April 20, 1983, why this case should not be dismissed in light of the court's ruling on plaintiffs' motion for partial summary judgment.